STATE OF MAINE                                          SUPERIOR COURT
KENNEBEC, ss                                           CRIMINAL ACTION
                                                       DOCKET NO. CR-08-932

STATE OF MAINE

      v.                                               ORDER ON MOTION TO SUPPRESS

ROGER OUELLETTE,

      Defendant

The defendant seeks to suppress evidence obtained as a result of the stop of his motor vehicle. The defendant argues that the stop was unlawful and that he was subjected to custodial interrogation without <u>Miranda</u> warnings. For the following reasons, the motion is granted.

FINDINGS OF FACT

Monmouth Police Officer Robert Wells began working full time for the Monmouth Police Department in January 2008. He graduated from the full time Police Academy course on 5/23/08.

On 10/7/08 at 9:31 p.m., he was on patrol and traveling down Oak Hill Road toward the intersection with Route 126. He observed a vehicle, a white, six-wheel dump truck, which appeared to be stopped in the intersection. The officer's first thoughts were that the truck was doing donuts or was turning around. The officer had no basis to conclude that the truck was doing donuts. The truck was stopped very briefly in the intersection, and making a turn when it is safe to do so is not a traffic violation. There were no vehicles approaching and other traffic was not affected in any way by the truck's operation. The truck took off, according to the officer, "at a high rate of speed," although there was no tire squealing, engine gunning, or fish tailing and Officer Wells could not testify with regard to any speed for the truck. Officer Wells

1

arrived at the intersection, observed the truck traveling north on Route 126, and turned to follow the truck.

At the intersection, the speed limit on Route 126 is 35 m.p.h. but increases to 50 m.p.h. approximately 100 feet from the intersection. Route 126 is not a straight road and includes hills, bridges, and corners. The officer followed the truck for 2.4 miles until the truck was stopped. The officer testified at trial that the truck's tires were on the centerline; at the hearing at the Department of Motor Vehicles (DMV), the officer testified that the truck traveled over the centerline. The officer did not observe the truck cross the fog line or rapidly accelerate or de-accelerate.

Officer Wells testified at trial that he traveled at speeds of 65 to 70 m.p.h. and did not make progress catching up to the truck. He increased his speed and caught up to the truck, which was not exceeding the speed limit. Officer Wells agreed at the motion to suppress hearing that he would have to travel at those speeds to catch a truck with a head start traveling at 50 m.p.h. Although Officer Wells testified at trial that he made a visual estimate of the truck's speed, that fact does not appear in his report. At the DMV hearing, Officer Wells testified that he did not make a visual estimate of speed.

Officer Wells stopped the truck in Litchfield by activating his blue auxiliary lights. Officer Wells testified initially that the stop was based on the facts that the truck was stopped in the middle of the road, the officer had to speed to catch the truck, and the truck traveled on the center line. He later agreed that he decided to pursue the truck when he first saw it because of its position in the road and intended to stop the truck regardless of its speed.

Officer Wells reported the stop and the truck plates to dispatch and waited for the information. He approached the truck; the operator, Roger Ouellette, had his license, registration, and insurance ready for the officer. Officer Wells observed that the

2

defendant's eyes were "just a little" bloodshot and his speech was slightly slurred. Officer Wells noted that the defendant had a condition Q on his license. Officer Wells asked the defendant how much he had had to drink that evening and the defendant replied, "three beers." Officer Wells returned to his cruiser, ran the defendant's license through dispatch, and determined that the defendant had a prior operating under the influence conviction in 2001.

When Officer Wells returned to the truck, he knew he had probable cause to arrest the defendant based on the admission that he had been drinking and his condition Q license. Officer Wells told the defendant that this was not a good situation for him. Officer Wells asked where the defendant was coming from and the defendant replied he was returning from Barney's, a bar in Lewiston.

Officer Wells asked the defendant to step out of the truck. Officer Wells conducted the HGN test. The defendant began the walk and turn test but the test was stopped because of the defendant's knee injury. The one-leg stand test was not attempted. The finger dexterity test was not completed to Officer Wells's satisfaction.

Officer Wells asked about the defendant's education. The defendant had dropped out of school in the 7th grade. Officer Wells decided that the defendant could perform the alphabet recitation test and was not concerned about the defendant's 7th-grade education. Officer Wells asked the defendant to recite the alphabet from D to M. The defendant continued to the letter Q, missed some letters, and inserted other letters in place of the correct letters. After asking the defendant if he knew numbers from 1 to 100, Officer Wells asked the defendant to count from 67 to 50. The defendant missed some numbers and almost counted past 50. There is no evidence on this record that the defendant was advised of his Miranda rights by Officer Wells.

Officer Wells agreed that his memory was fresher when he testified under oath at the DMV hearing on 11/19/08 than during the hearing on the motion to suppress. Although he testified at the DMV hearing that he wrote an accurate, complete, and reliable report and that he did not want to amend or supplement his report, he agreed at the hearing on the motion to suppress that the report was not entirely accurate or reliable.

CONCLUSIONS

Stop

Officer Wells was a relatively new police officer at the time of this stop. The differences among his DMV hearing testimony, his motion to suppress hearing testimony, and his report affect the court's ability to determine exactly what happened on 10/7/08. Officer Wells was the only witness who testified at the hearing.

It is unlikely that a six-wheel dump truck left the intersection from a stopped position "at a high rate of speed." The court concludes that the truck was not speeding. The court gives no significance to the testimony regarding the tires in the area of the centerline. The court concludes that Officer Wells decided to stop the truck when he saw it in the intersection because he thought the operator of the truck was doing donuts in the road. Except for Officer Wells's hunch, there is no evidence that the truck was being operated in an inappropriate manner.

"An investigatory stop is justified if at the time of the stop the officer has an articulable suspicion that criminal conduct has taken place, is occurring, or imminently will occur, and the officer's assessment of the existence of specific and articulable facts sufficient to warrant the stop is objectively reasonable in the totality of the circumstances." State v. Burgess, 2001 ME 117, ¶ 7, 776 A.2d 1223, 1227 (quoting State v. Tarvers, 1998 ME 64, ¶ 3, 709 A.2d 726, 727). There is no basis on this record to justify

4

the stop of the defendant's truck. The evidence obtained after this constitutional violation is excluded. See State v. Hunt, 682 A.2d 690, 692 (Me. 1996) (evidence should be excluded unless the connection between the evidence and the constitutional violation is "sufficiently weak").

<u>Statements</u>

Although the statements made by the defendant are excluded as a result of the unconstitutional investigatory stop, the defendant also argues that statements made during the field sobriety tests were obtained in violation of <u>Miranda</u>. Considering the factors outlined in <u>State v. Michaud</u>, the court concludes that the defendant was not in custody. See <u>State v. Michaud</u>, 1998 ME 251, ¶ 4, 724 A.2d 1222, 1226;[1] <u>State v. Higgins</u>, 2002 ME 77, ¶ 12, 796 A.2d 50, 54 ("[A] Miranda warning is necessary only if a defendant is: (1) 'in custody'; and (2) 'subject to interrogation.'"). Although Officer Wells told the defendant that this was not a good situation for him, the officer did not communicate that he had probable cause to arrest the defendant. Viewed in their totality, none of the <u>Michaud</u> factors or the facts of this case warrants a finding that this case involved anything other than an "ordinary traffic stop to ask a few questions and to conduct field sobriety tests," which "does not amount to custodial interrogation." State

---

[1] <u>Michaud</u> provides a number of objective factors the court may consider, including:

> (1) the locale where the defendant made the statements; (2) the party who initiated the contact; (3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant); (4) subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave; (5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave; (6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it); (7) whether the suspect was questioned in familiar surroundings; (8) the number of law enforcement officers present; (9) the degree of physical restraint placed upon the suspect; and (10) the duration and character of the interrogation.

<u>Michaud</u>, 1998 ME 251, ¶ 4, 724 A.2d at 1226.

v. Lewry, 550 A.2d 64, 65 (Me. 1988); see also Berkemer v. McCarty, 468 U.S. 420, 423 (1984) (defendant questioned outside his vehicle on side of road).

Moreover, notwithstanding the court's determination that the defendant was not in custody, "if evidence obtained during custodial interrogation is not testimonial, neither the Miranda decision nor the Maine Constitutional privilege is implicated." State v. McKechnie, 1997 ME 40, ¶ 7, 690 A.2d 976, 978. "Field sobriety test results are generally considered to be physical or non-testimonial evidence." State v. Eastman, 1997 ME 39, ¶ 10, 691 A.2d 179, 182. Alphabet recitation and counting exercises are arguably "more communicative in nature" than heel-to-toe and finger-to-nose tests, which are non-testimonial. McKechnie, 1997 ME 40, ¶ 10, 690 A.2d at 979. These tests, however, "are outside the protective sphere of the privilege against self-incrimination because there is no disclosure of subjective knowledge or thought processes in a constitutionally prohibited sense." Vanhouton v. Commonwealth, 676 N.E.2d 460, 466 (Mass. 1997) (finding the "vast majority of other jurisdictions that have addressed the issue" conclude that alphabet recitation tests or comparable counting exercises are not testimonial in nature). The statements obtained are not in violation of Miranda.

The entry is

> The Defendant's Motion to Suppress is GRANTED.
> Evidence obtained as a result of the stop of the Defendant's
> vehicle is SUPPRESSED.

Date: April 28, 2009

Nancy Mills
Justice, Superior Court

6

STATE OF MAINE
  vs
ROGER J OUELLETTE
47 NICHOLS STREET
LEWISTON ME 04240

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CR-2008-00932

**DOCKET RECORD**

DOB: 10/25/1964
Attorney: WILLIAM BLY
     ·
    NIELSEN & BLY LLC
    PO BOX 1871
    BIDDEFORD ME 04005-1871
    RETAINED 10/23/2008

State's Attorney: EVERT FOWLE

## Charge(s)

1    OPERATING UNDER THE INFLUENCE-1 PRIOR       10/07/2008 MONMOUTH
Seq 9879   29-A   2411(1-A)(B)(1)        Class D
   WELLS                    / MON

## Docket Events:

12/08/2008 Charge(s): 1
    TRANSFER -  TRANSFER FOR JURY TRIAL EDI ON 12/08/2008 @ 18:00

    TRANSFERRED CASE: SENDING COURT CASEID AUGDCCR200802385
    FILING DOCUMENT -  CASH BAIL BOND FILED ON 10/08/2008

    Charge(s): 1
    HEARING -  ARRAIGNMENT SCHEDULED FOR 12/03/2008 @ 10:00 in Room No.  1

    NOTICE TO PARTIES/COUNSEL
    Charge(s): 1
    HEARING -  ARRAIGNMENT WAIVED ON 12/03/2008

    BAIL BOND -  $500.00 CASH BAIL BOND FILED ON 10/09/2008

    BAIL BOND -  CASH BAIL BOND DISBURSEMENT ON 12/08/2008

    Party(s):  ROGER J OUELLETTE
    ATTORNEY -  RETAINED ENTERED ON 10/23/2008

    Attorney:  WILLIAM BLY
    Charge(s): 1
    SUPPLEMENTAL FILING -  COMPLAINT FILED ON 11/19/2008

    Charge(s): 1
    PLEA -  NOT GUILTY ENTERED BY COUNSEL ON 12/03/2008

    Charge(s): 1
    TRANSFER -  TRANSFER FOR JURY TRIAL GRANTED ON 12/05/2008

    Charge(s): 1
    TRANSFER -  TRANSFER FOR JURY TRIAL REQUESTED ON 10/23/2008

    Charge(s): 1

FINDING - TRANSFER FOR JURY TRIAL TRANSFERRED ON 12/08/2008

AUGSC
12/09/2008 Charge(s): 1
TRANSFER - TRANSFER FOR JURY TRIAL RECVD BY COURT ON 12/09/2008

RECEIVED FROM AUGUSTA DISTRICT COURT DOCKET NO: CR-08-2385
12/10/2008 BAIL BOND - $500.00 CASH BAIL BOND FILED ON 12/09/2008

Bail Receipt Type: CR
Bail Amt: $500
                              Receipt Type: CK
Date Bailed: 10/09/2008      Prvdr Name: ROGER  OUELLETTE
                              Rtrn Name: ROGER  OUELLETTE

01/14/2009 MOTION - MOTION FOR ENLARGEMENT OF TIME FILED BY DEFENDANT ON 01/07/2009

01/14/2009 MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 01/13/2009
           NANCY  MILLS , JUSTICE
           COPY TO PARTIES/COUNSEL
01/14/2009 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 01/07/2009

01/14/2009 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 03/05/2009 @ 8:30

           NOTICE  TO PARTIES/COUNSEL
01/21/2009 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 01/21/2009

           AMENDED
01/21/2009 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 03/05/2009 @ 8:30

           NOTICE  TO PARTIES/COUNSEL                                    . AMENDED
03/05/2009 HEARING - MOTION TO SUPPRESS CONTINUED ON 03/05/2009

03/05/2009 HEARING - MOTION TO SUPPRESS CONTINUED ON 03/05/2009

03/05/2009 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 04/08/2009 @ 9:00

           NOTICE  TO PARTIES/COUNSEL
03/05/2009 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 04/08/2009 @ 9:00

           NOTICE  TO PARTIES/COUNSEL
04/08/2009 OTHER FILING - OTHER DOCUMENT FILED ON 04/07/2009

           DEFENDANT'S NOTICE OF EXPERT WITNESS AND CERTIFICATE OF SERVICE
04/15/2009 ORDER - TRANSCRIPT ORDER FILED ON 04/14/2009

           Attorney: WILLIAM BLY
           TRANSCRIPT ORDER OF HEARING OF MOTION TO SUPPRESS
04/29/2009 HEARING - MOTION TO SUPPRESS HELD ON 04/08/2009
           NANCY  MILLS , JUSTICE
           Reporter: TAMMY DROUIN
           Defendant Present in Court
04/29/2009 HEARING - MOTION TO SUPPRESS HELD ON 04/08/2009

NANCY MILLS , JUSTICE
Reporter: TAMMY DROUIN
Defendant Present in Court
04/29/2009 MOTION - MOTION TO SUPPRESS GRANTED ON 04/29/2009
NANCY MILLS , JUSTICE
COPY TO PARTIES/COUNSEL
04/29/2009 MOTION - MOTION TO SUPPRESS GRANTED ON 04/29/2009
NANCY MILLS , JUSTICE
COPY TO PARTIES/COUNSEL

A TRUE COPY
ATTEST: _____
Clerk