## STATE of Maine

v.

## Mark E. HILL.

Supreme Judicial Court of Maine.

Submitted on Briefs March 19, 1992.
Decided April 22, 1992.

Wayne S. Moss, Asst. Atty. Gen., Augusta, Joseph M. O'Connor, Asst. Dist. Atty., South Paris, for plaintiff.

Mary Anne Smith, Norway, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

The State appeals an order of the District Court (South Paris, *MacNichol, J.*) suppressing evidence of defendant Mark E. Hill's operating a vehicle while under the influence of intoxicating liquors. 29 M.R.S.A. § 1312–B (1978 & Pamph.1991). We vacate the suppression order.

Mark E. Hill was charged in District Court with OUI. Hill filed a motion to suppress and the court held a hearing. Officer Geoffrey Low of the Norway Police Department, the sole witness at the hearing, testified that he was on duty in Norway around 1:40 a.m. on April 20, 1991, when he observed a pickup truck drive by with no rear bumper and no discernible rear license plate. Officer Low pulled into traffic intending to stop the truck for failing to display a rear plate in violation of 29 M.R.S.A. § 381 (1978 & Pamph.1991) ("a registration plate shall be attached to the rear of each vehicle"), but before he could do so the driver pulled the truck into a rest area. Officer Low pulled in behind the truck, put on his blue lights, and walked up to the truck to ask the driver for his license and registration. Just before reaching the cab of the truck, Officer Low noticed an

unilluminated license plate in the rear window of the cab. Nonetheless, Officer Low asked the driver for his license and registration. Officer Low's observation of the driver, who turned out to be Hill, producing his license and registration led to his arrest for operating under the influence.

At the conclusion of the hearing, the court granted Hill's motion to suppress Officer Low's testimony because the basis for his reasonable suspicion had dissipated before he requested Hill's license and registration. The State's appeal followed.

▆▆▆ In determining the reasonableness of Officer Low's investigatory *Terry* stop, "the court must first consider whether the officer's action was justified at its inception; and, second, whether the action taken was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *United States v. Walker,* 924 F.2d 1, 3 (1st Cir.1991). To be valid under the fourth amendment, the stop must be supported by specific and articulable facts which, taken as a whole and together with the rational inferences from those facts, reasonably warrant the police intrusion. *See Terry,* 392 U.S. at 21, 88 S.Ct. at 1879–80; *State v. Chapman,* 495 A.2d 314, 316–17 (Me.1985); *State v. Garland,* 482 A.2d 139, 142 (Me.1984). A motion to suppress evidence gained from such a stop, based on uncontroverted facts, involves a legal conclusion which we independently review on appeal. *See State v. Cloutier,* 544 A.2d 1277, 1280 (Me.1988); *State v. Boilard,* 488 A.2d 1380, 1384 (Me. 1985).

▆▆▆ The *Terry* requirement of specific and articulable facts protects a defendant from the intrusion of random police stops. *See Delaware v. Prouse,* 440 U.S. 648, 659–60, 99 S.Ct. 1391, 1399–1400, 59 L.Ed.2d 660 (1979). The record in this case, however, does not raise the concern of such stops. Rather, Officer Low's seizure of Hill, based upon a suspected violation of 29 M.R.S.A. § 381, demonstrates the specific and articulable facts necessary to justify the seizure under the fourth amendment.

*See State v. Carsetti,* 536 A.2d 1121, 1122 (Me.1988), *habeas corpus petition denied,* 932 F.2d 1007 (1st Cir.1991). Thus the apparent absence of a rear license plate justified the stop at its inception.

▆▆▆ Hill argues, however, that the request for his license and registration is invalid under *Garland,* because Officer Low's reason justifying the initial stop dissipated on seeing the license plate in the rear window of the truck. Hill's reliance on *Garland* is misplaced. In *Garland* we acknowledged an affirmative duty on the part of a police officer "to discontinue the investigation and forego a *Terry*-type stop of [an] individual when *by the time of the intended stop* justification for the initial suspicion has evaporated." *Garland,* 482 A.2d at 144 (emphasis added). This is simply recognition of the fact that an officer's conduct is not justified at its inception if the articulable suspicion vanishes *before* the seizure occurs. Contrary to Hill's contention, once a defendant has been validly seized, the scope of subsequent police conduct must be justified under the second *Terry* prong and evaluated to determine whether it is reasonable under all the circumstances. *See Terry,* 392 U.S. at 9, 20, 88 S.Ct. at 1873, 1879; *Walker,* 924 F.2d at 3.

▆▆▆ This reasonableness determination involves a "weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979). In this case, Hill was validly stopped for a suspected traffic violation. Officer Low then sought to ensure that Hill was neither unlicensed nor operating an unregistered vehicle. Balancing this significant State interest against the minimal further intrusion of asking Hill for the documents, we hold that Officer Low did not unreasonably intrude on Hill's fourth amendment rights. *Cf. Prouse,* 440 U.S. at 659, 99 S.Ct. at 1399 ("it must be assumed that finding an unlicensed driver among those who commit traffic violations is a much more likely

event than finding an unlicensed driver by choosing randomly from the entire universe of drivers").

The entry is:

Remanded to the District Court for entry of an order denying the motion to suppress.

All concurring.